1   KAREN P. HEWITT
    United States Attorney
2   STEWART M. YOUNG
    Assistant U.S. Attorney
3   California State Bar No. 234889
    United States Attorney's Office
4   Federal Office Building
    880 Front Street, Room 6293
5   San Diego, California  92101-8893
    Telephone: (619) 557-6228
6
    Attorneys for Plaintiff
7   UNITED STATES OF AMERICA

8                        UNITED STATES DISTRICT COURT

9                      SOUTHERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,        )    CRIMINAL CASE NO. 3:07-CR-3055 L
                                     )
12                                   )    DATE:        January 28, 2008
                Plaintiff,           )    TIME:        10:00 A.M.
13                                   )
                                     )    GOVERNMENT'S RESPONSE AND
14              v.                   )    OPPOSITION TO DEFENDANTS' MOTIONS
                                     )
15                                   )    [5-1]   TO COMPEL DISCOVERY AND
    JUAN MANUEL TORRES-GOMEZ,        )            PRESERVE EVIDENCE; AND
16                                   )    [5-2]   RELEASE THE GRAND JURY
                Defendant.           )            TRANSCRIPTS;
17                                   )    [5-3]   COMPEL THE GOVERNMENT TO
                                     )            PROVIDE A BILL OF PARTICULARS;
18                                   )    [5-4]   SUPPRESS STATEMENTS:
                                     )    [5-5]   TO SUPPRESS EVIDENCE SEIZED IN
19                                   )            VIOLATION OF THE FOURTH
                                     )            AMENDMENT; AND,
20  _____    )    [5-6]   GRANT LEAVE TO FILE FURTHER
                                          MOTIONS.
21
                                          TOGETHER WITH A STATEMENT OF THE
22                                        FACTS AND THE MEMORANDUM OF
                                          POINTS AND AUTHORITIES, AND
23                                        GOVERNMENT'S MOTIONS FOR:

24                                        (1) RECIPROCAL DISCOVERY
                                          _____
25
         COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel,
26
    KAREN P. HEWITT, United States Attorney, and Stewart M. Young, Assistant United States Attorney,
27
    hereby files its Response and Opposition to Defendant's Motions for to Compel Discovery, Release the
28
    Grand Jury Transcripts, Compel the Government to Provide a Bill of Particulars, Suppress Statements,

and Suppress Evidence Seized In Violation of the Fourth Amendment, and its Motion for Reciprocal

Discovery. This response and motion is based upon the files and records of the case together with the

attached statement of facts and memorandum of points and authorities.

# I

## STATEMENT OF THE CASE

On November 9, 2007, the Government filed a six-count indictment charging Francisco Magana,

Jr. ("Defendant") with three counts of violating 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2, bringing

an alien into the United States for financial gain and aiding and abetting, and three counts of violating

8 U.S.C. §§ 1324(a)(1)(A)(ii) and (v)(II), transportation of an alien. On November 13, 2007, Defendant

was arraigned on the Indictment and entered a plea of not guilty.

# II

## STATEMENT OF FACTS

On September 12, 2007, Senior Border Patrol Agent G. Suarez was conducting anti-smuggling

duties in the Boulevard Patrol Station area. Agent Suarez was in an unmarked DHS car on that day, and

drove into the Golden Acorn casino parking lot around 4:45 pm. According to Agent Suarez, the Golden

Acorn Casino parking lot is a well-known alien and narcotic smuggling staging area, located

approximately 20 miles east of the Tecate Port of Entry.

As soon as Agent Suarez pulled into the lot, he observed a blue GMC van with Sonora, Mexico,

license plates. Agent Suarez watched this van, and after ten minutes, the van pulled out of the parking

lot, driving northbound on Crestwood Road. No one had entered or exited the van during the ten

minutes that Agent Suarez watched this van. He followed the van and it appeared to be driving normally

and did not appear to be heavy. Within a quarter mile north of I-8, the GMC conducted a "hasty three-

point U-turn on a blind curve." Agent Suarez passed the van and saw the defendant driving the van.

Agent Suarez also noticed that the defendant "appeared overly nervous and exhibited a stiff, up-right

posture."

Agent Suarez then turned his vehicle around and observed the van pulled to the side of the road

adjacent to Tusil Road. According to Agent Suarez, this location is a popular load spot for illegal aleins,

especially as he and his fellow agents have made numerous arrests of illegal aliens waiting in this area.

07-CR-3055L

1  He stopped and watched the van, but when the van made no effort to depart, Agent Suarez drove past

2  it out of view.  He returned within a minute, but the van had already departed and entered eastbound onto

3  I-8.

4      Agent Suarez followed the van onto I-8.  At that point, he noticed that the GMC van appeared

5  heavier than earlier.  The rear of the GMC van swayed as though it was carrying additional weight,

6  although no rear passengers were visible.  Agent Suarez pulled alongside the van and observed the

7  defendant still at the wheel and still appearing nervous.  According to Agent Suarez, the defendant was

8  "sitting straight upright, staring directly ahead and he appeared to be clutching the steering wheel

9  tightly."  Based on his experience, this was "[indicative] of alien smuggler load drivers."

10     At that point, Agent Suarez requested assistance to perform a vehicle stop.  One agent fell in

11  behind the van and activated his lights.  The van continued for a short distrance and then pulled to the

12  shoulder of I-8.  As agents approached the van on foot, they observed people lying down on the floor

13  of the van.  Upon inquiry at that point, defendant indicated that he did not have any identification, no

14  ownership or insurance papers for the van, and was a citizen of Mexico present in the United States

15  without the requisite permission.  Five passengers were also found in the van, and an immigration

16  inspection on all of the individuals revealed that they were all citizens and nationals of Mexico lacking

17  the proper documentation allowing them to be in the United States.

18     Post-Miranda, Defendant elected to speak to agents without an attorney present.  He advised that

19  he crossed the border two days before on September 10, 2007.  He stated he crossed with at least eight

20  other individuals and that his sister made arrangements for him to be smuggled into the United States

21  for $1,600.  He stated his group walked for about fifteen hours to a load spot on I-8, and that a white

22  truck and blue van showed up.  Everyone in the group, including the foot-guide, got into the blue van

23  and drove to the Golden Acorn Casino parking lot.  Defendant stated that they waited at the parking lot

24  for several hours, and that the footguide then dropped them off north of I-8 on Crestwood Road.  The

25  footguide gave defendant a cellphone and instructed him to turn it on at noon.

26     When he turned it on at noon, defendant says he was told the van had been left back at the

27  parking lot and that the smugglers were not going to pick up the group because the checkpoint was

28  operational.  Defendant was told by the smuggler that he needed to pick up the van and transport the

07-CR-3055L

group to a rest area on I-8, where the white truck would be waiting for them. Defendant then picked up the van and drove to the spot to pick up the rest of the group. He admitted he then drove east on I-8, in furtherance of the group getting smuggled to their ultimate destination.

Discussions with the three material witnesses named in the Indictment revealed that they were to pay between $1,000 and $2,300 to be smuggled to Los Angeles or El Monte, California. All of them stated they waited at the load site to be picked up. All of them identified defendant as the driver of the blue van, and two of the material witnesses named in the indictment identify Defendant as both the footguide and the driver of the vehicle.

**III**

**GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION FOR DISCOVERY**

The United States intends to fully comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jenks Act, 18 U.S.C. § 3500, and Rule 16 of the Federal Rules of Criminal Procedure. Thus far, the United States has produced 131pages of discovery and several discs of statements. Defendants' specific requests are addressed below.

**(1) The Defendant's Statements**

The United States recognizes its obligation under Rule 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendants the substance of Defendant's oral statements and Defendant's written statements. The United States has produced all of Defendant's oral and written statements that are known to the undersigned Assistant U.S. Attorney at this date and all available compact discs. If the United States discovers additional written or oral statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be provided to Defendant.

The United States has no objection to the preservation of the handwritten notes taken by any of the United States' agents and officers. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the United States objects to providing Defendant with a copy of any rough notes at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report. See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not

1   require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and

2   a report).  The United States is not required to produce rough notes pursuant to the Jencks Act, because

3   the notes do not constitute "statements" (as defined under 18 U.S.C. § 3500(e)) unless the notes (1)

4   comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or

5   adopted by the witness.  United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980).  The rough

6   notes in this case do not constitute "statements" in accordance with the Jencks Act.

7   See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements

8   under the Jencks Act where notes were scattered and all the information contained in the notes was

9   available in other forms).  The notes are not Brady material because the notes do not present any material

10  exculpatory information, or any evidence favorable to Defendants that is material to guilt or punishment.

11  Brown, 303 F.3d at 595-96 (rough notes not Brady material because the notes were neither favorable to

12  the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71

13  (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient).

14  If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the

15  Jencks Act, or Brady, the notes in question will be provided to the Defendants.

16      All recorded conversations by the defendant have been provided to the defendant.

17      **(2) Arrest Reports, Notes and Dispatch Tapes**

18      The United States has provided the Defendant with arrest reports.  As noted previously, agent

19  rough notes, if any exist, will be preserved, but they will not be provided as part of Rule 16 discovery.

20  The United States is unaware of any dispatch tapes regarding Defendant's apprehension, but has

21  requested the Border Patrol to preserve these if they do exist.  If the United States becomes aware of such

22  dispatch tapes, and those tapes fall under Rule 16 discovery obligations, the United States will provide

23  those tapes.

24      **(3) Brady Material**

25      Again, the United States is well aware of and will continue to perform its duty under Brady v.

26  Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory

27  evidence within its possession that is material to the issue of guilt or punishment.  Defendant, however,

28  is not entitled to all evidence known or believed to exist which is, or may be, favorable to either of the

accused, or which pertains to the credibility of the United States' case. As stated in <u>United States v. Gardner</u>, 611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality." <u>Id.</u> at 774-775 (citation omitted).

The United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

Although the United States will provide conviction records, if any, which could be used to impeach a witness, the United States is under no obligation to turn over the criminal records of all witnesses. <u>United States v. Taylor</u>, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. <u>United States v. Gering</u>, 716 F.2d 615, 621 (9th Cir. 1983); <u>United States v. Angelini</u>, 607 F.2d 1305, 1309 (9th Cir. 1979).

Finally, the United States will continue to comply with its obligations pursuant to <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991).

### **(4) Sentencing Information**

Defendant claims that the United States must disclose any information affecting Defendant's sentencing guidelines because such information is discoverable under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). The United States respectfully contends that it has no such disclosure obligation under <u>Brady</u>.

The United States is not obligated under <u>Brady</u> to furnish a defendant with information which he already knows. <u>United States v. Taylor</u>, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). <u>Brady</u> is a rule of disclosure, and therefore, there can be no violation of <u>Brady</u> if the evidence is already known to the defendant. In such case, the United States has not suppressed the evidence and consequently has no <u>Brady</u> obligation. <u>See United States v. Gaggi</u>, 811 F.2d 47, 59 (2d Cir. 1987).

But even assuming Defendant does not already possess the information about factors which might affect their guideline ranges, the United States would not be required to provide information bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior to his sentencing date. <u>See United States v. Juvenile Male</u>, 864 F.2d 641, 647 (9th Cir. 1988) ("No

07-CR-3055L

[Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value."). Additionally, the United States is unaware of any cooperation, or even attempted cooperation, provided by Defendant. Accordingly, Defendant's demand for this information is premature.

**(5) Defendant's Prior Record**

The United States will provide the Defendant with a copy of his criminal record in accordance with Federal Rule of Criminal Procedure 16(a)(1)(B).

**(6) Proposed 404(b) and 609 Evidence**

Should the United States seek to introduce any similar act evidence pursuant to Federal Rules of Evidence 404(b) or 609, the United States will provide Defendant with official notice of its proposed use of such evidence and information about such bad act at the time the United States' trial memorandum is filed.

**(7) Evidence Seized**

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

The United States, however, need not produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

**(8) Preservation of Evidence**

The United States will preserve all evidence to which Defendant is entitled pursuant to the relevant discovery rules. However, the United States objects to any blanket request to preserve all physical evidence.

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within his possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or intended for use by the United States as evidence in chief at trial, or obtained

07-CR-3055L

from or belong to Defendant, including photographs. The United States has made the evidence available to Defendant and his investigators and will comply with any request for inspection.

**(9) Henthorn Evidence**

The United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

**(10) Tangible Objects**

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or intended for use by the United States as evidence during its case-in-chief at trial, or obtained from or belongs to Defendant. The United States is unaware of any narcotics involved in this alien smuggling case, as mentioned by the Defendant in Section II(10) of his Memorandum. The United States need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

The United States is happy to provide defendant with an opportunity to view his A-File, as long as reasonable timely request is made to the United States to provide the A-File viewing.

**(11) Expert Witnesses**

The Government will comply with Rule 16(a)(1)(G) and provide Defendant with a written summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. This summary shall include the expert witnesses' qualifications, the expert witnesses opinions and the bases and reasons for those opinions.

**(12) Reports of Scientific Tests or Examination**

The United States will provide the results of any reports of scientific tests or examinations, should any be conducted. At this time, the United States is aware of no tests or examinations which are material to the preparation of the defense or are intended for use by the United States at trial.

**(13) Evidence of Bias or Motive to Lie**

The United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective

07-CR-3055L

witnesses have a motive to falsify or distort testimony.

**(14) Impeachment Evidence**

As stated previously, the United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

**(15) Criminal Investigation of Government Witness**

Defendant is not entitled to any evidence that a prospective witness is under criminal investigation by federal, state, or local authorities. "[T]he criminal records of such [Government] witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976); United States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records of prosecution witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United States v. Rinn, 586 F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that the Government has no discovery obligation under Fed. R. Crim. P. 16(a)(1)(C) to supply a defendant with the criminal records of the Government's intended witnesses.") (citing Taylor, 542 F.2d at 1026).

The United States will, however, provide the conviction record, if any, which could be used to impeach witnesses the United States intends to call in its case-in-chief. When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

**(16) Evidence Affecting Perception, Recollection, Communication or Truth-Telling**

The United States is unaware of any evidence indicating that a prospective witness has a problem with perception, recollection, communication, or truth-telling.

**(17) Jencks Act Material**

The Jencks Act, 18 U.S.C. § 3500, requires that, after a United States witness has testified on direct examination, the United States must give the Defendant any "statement" (as defined by the Jencks Act) in its possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. § 3500(b). A "statement" under the Jencks Act is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the

07-CR-3055L

witness before a grand jury. 18 U.S.C. § 3500(e).  If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act.  United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)).  While the United States is only required to produce all Jencks Act material after the witness testifies, the United States plans to provide most (if not all) Jencks Act material well in advance of trial to avoid any needless delays.

Additionally, no witness who testified before the grand jury will testify at trial, so the United States does not anticipate that it will have to provide any of the Grand Jury transcripts to Defendant.

**(18) Giglio Information**

As stated previously, the United States will comply with its obligations pursuant to Brady v. Maryland, 373 U.S.  83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and Giglio v. United States, 405 U.S. 150 (1972).

**(19) Agreements Between the Government and Witnesses**

The United States is unaware of any agreement between it and any cooperating witnesses, who have committed crimes, but were not charged, so that they may testify for the Government in this case. The United States will comply with all of its obligations under  Brady, Giglio, Jencks Act, and Rule 16, regarding any potential cooperating witness, including any of the material witnesses.  Again, at this time, the United States is unaware of any agreement between any of these potential witnesses, but will provide any relevant and pertinent information if such an agreement arises.

The United States is unaware of any arrangements between the material witness and the United States, but will provide that information to defendant if falls under any of the rules or caselaw discussed above.

**(20) Informants and Cooperating Witnesses**

If the Government determines that there is a confidential informant whose identity is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," it will disclose that person's identity to the Court for in-chambers inspection.  See Roviaro v. United States, 353 U.S. 53, 60-61 (1957); United States v. Ramirez-Rangel, 103 F.3d 1501, 1505 (9th Cir. 1997).      The United States has already stated it will comply with its Brady, Giglio, Jencks Act, and further Rule 16

07-CR-3055L

discovery obligations. The United States will comply with the structure of Roviaro if it determines that any confidential informant information is "relevant and helpful to the defense of [the] accused, or is essential to the fair determination of a cause." Roviaro, 353 U.S. at 60.

As the Court is aware, the Supreme Court has declined to adopt an absolute rule requiring disclosure of an informant's identity whenever it is relevant or helpful to a defendant's case. See Roviaro v. United States, 353 U.S. at 62. Indeed, as the D.C. Circuit stated in United States v. Skeens, 449 F.2d 1066, 1071 (D.C. Cir.1971), a "heavy burden ... rests on an accused to establish that the identity of an informant is necessary to his defense." Id. at 1070. "Mere speculation" that an informant's testimony may assist the defendant is not sufficient to meet this burden. United States v. Mangum, 100 F.3d 164, 172 (D.C. Cir.1996). In determining whether the Defendant has met this burden, the Court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense," all the while "taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Roviaro, 353 U.S. at 62. The United States will comply with its Rovario obligations, but it also requests that any information provided to the Defendants be subject to in camera review by the Court.

**(21) Bias by Informants or Cooperating Witnesses**

As stated in Section III(12), the United States is unaware of any evidence indicating that any prospective witness, whether Government agent, Informant, or Cooperating Witness, is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses, whether Government agent, Informant, or Cooperating Witness, have a motive to falsify or distort testimony. It will comply with its Giglio obligations if it becomes aware of any indication of bias on behalf of any of these witnesses.

**(22) Residual Request**

The United States has already complied with Defendant's request for prompt compliance with its discovery obligations prior to Indictment. The United States will continue to comply with all of its discovery obligations, but objects to the broad nature of Defendant's further discovery requests.

07-CR-3055L

## IV

## THE UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO RELEASE THE GRAND JURY TRANSCRIPTS.

The United States submits that release of the grand jury transcripts is not appropriate, despite defendant's argument regarding United States v. Lopez, 484 F.3d 1186 (9th Cir. May 7, 2007) (en banc). In this case, unlike Lopez, there is evidence that defendant "aided and abetted the smuggling scheme before the aliens were brought to the United States." Lopez, 484 F.3d at 1200. In his post-arrest statements, defendant admitted that he drove the vehicle to pick up the group of aliens waiting to head to their destination in Los Angeles or El Monte, California. Additionally, two of the three material witnesses have identified defendant as the footguide, and not just the driver of the blue van after the group had crossed over the border. Accordingly, defendant's argument under Lopez is unavailing, given the statements by those material witnesses.

Therefore, viewed in the light most favorable to the United States (or from practically any other point of view), the defendant aided and abetted the smuggling scheme before the crime was complete. Aiding and abetting is not a substantive offense, but rather it is a theory of liability. See United States v. Ramirez-Martinez, 272 F.3d 903, 911 (9th Cir. 2001). Accordingly, the Ninth Circuit has found that aiding and abetting is implied in every count of every federal indictment. United States v. Vaandering, 50 F.3d 696, 702 (9th Cir. 1995); United States v. Armstrong, 909 F.2d 1238, 1241 (9th Cir. 1990); United States v. Gaskins, 849 F.2d 454, 459 (9th Cir. 1988); United States v. Michaels, 796 F.2d 1112 (9th Cir. 1986). Indeed, in Armstrong, the court held that 18 U.S.C. § 2 does not define a substantive offense and does not even need to be alleged in the indictment.

Any attempt to rely on general statutory construction case law which does not address the issue of aiding and abetting or take into account the broad applications of the aiding and abetting statute. Under 18 U.S.C. § 2, anyone who aids and abets the commission of any crime can be prosecuted for that crime: "[W]hoever commits an offense against the United States or aids, abets . . . is punishable as a principle." In other words, 18 U.S.C. § 2 is a rule of inclusion and not exclusion. Even if the aiding and abetting statutes had not been included in the indictment, the United States would be free to argue an

12

aiding and abetting theory - no matter what the substantive charges.

Similarly, aiding and abetting need not be specifically included in the criminal statute's language in order for the government to proceed on that basis. Once the indictment is returned, <u>Armstrong</u>, <u>Gaskins</u> and <u>Michaels</u> mandate, aiding and abetting is embodied in full for all the charges contained therein. The Ninth Circuit has affirmed convictions based on an aiding and abetting theory. In <u>United States v. Barajas-Montiel</u>, 185 F.3d 947 (9th Cir. 1999), for example, the defendant was convicted of six counts of bringing in illegal aliens for financial gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2. Although the legality of the § 2 convictions was not raised, the Court affirmed Defendant's convictions.

In <u>United States v. Ramirez-Martinez</u>, 272 F.3d 903, 911, the Ninth Circuit affirmed the district court's finding that the count charging the defendant with violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2 was not defective. The appellate court stated that aiding and abetting is not a separate offense and is applicable to the entire criminal code. <u>See id.</u>; <u>see also United States v. Angwin</u>, 271 F.3d 786, 800 (9th Cir. 2001) (affirming district court decision to deny the defendant's motion to dismiss the count charging violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2). <u>See also United States v. Angwin</u>, 271 F.3d at 800; <u>See also United States v. Barajas-Montiel</u> (affirming defendant's conviction of six counts of bringing-in illegal aliens for financial gain in violation of 8 U.S.C. § 1324 (a)(2)(B)(ii) and 18 U.S.C. § 2). Second, even assuming the Court finds that the statutes are duplicitous, the Court may instruct the jury particularizing the distinct offense charged in each count of the Indictment. <u>See Ramirez-Martinez</u>, 272 F.3d at 915. Thus, the remedy suggested by Defendant is not the only remedy available.

Despite defendant's arguments, <u>Lopez</u> has not radically changed the calculus of the aiding and abetting liability theory to the point of dismissal on this case. <u>Lopez</u> stands for the proposition that aiding and abetting liability is not automatic, but in this case, the United States has a strong argument to proceed on aiding and abetting liability. The statements by material witnesses - that defendant himself was the foot guide that guided this group into the United States – should be the strong blow against any argument that aiding and abetting does not apply. The smuggling organization clearly relied on the defendant, given that he actually guided these people into the United States and then began to transport

07-CR-3055L

them in the blue van afterwards.  Any argument that the grand jury transcripts need to be released does not mesh with the information already provided in this case, and the United States should have the chance to prove its case on this theory.

Therefore, the United States requests that Defendant's motion to release the grand jury transcripts should be denied.

V

**THE UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION FOR A BILL OF PARTICULARS.**

As stated above, the United States' aiding and abetting theory is based on the evidence that defendant himself was the footguide that brought the group of illegal aliens into the United States and then began transporting them in the blue van.  The United States submits that no further bill of particulars is required, especially given that defendant has had discovery in this case for the past several months.  There is no prejudicial surprise for defendant, given that he had read the reports and viewed the statements made by the material witnesses in this case.  Accordingly, the United States submits that a bill of particulars requirement would be unfair and inappropriate in this case.

VI

**RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

Defendant moves to suppress statements made by him to agents prior to his arrest and also after his written waiver of <u>Miranda</u> rights.  (<u>See</u> Def.'s Mot. at 12-13.)  No actual argument is made why these statements should, under the facts of this specific case, be suppressed.  Defendant also requests an evidentiary hearing to establish the facts and to aid the Court in deciding his suppression motion; no further declaration for this request is given regarding suppressing the statements made by the defendant.  Accordingly, the United States believes that the requirements for such a suppression hearing on the statements has not been met.  If the Court chooses to hold an evidentiary hearing on Defendant's motion at a future date, the United States would prove that Defendant's statements were voluntary and are, therefore, admissible.

    1.   <u>Defendant's Pre-Arrest Statements Are Admissible</u>

Defendant appears to challenge the admissibility of statements he made to agents during a field

14

1  interview that following discovery of a number of aliens in the vehicle being driven by the defendant,

2  These statements were not made while in custody, and there is no evidence to support a claim of

3  involuntariness.  Accordingly, Defendant's pre-arrest statements are admissible.

4      When a person has been deprived of his or her freedom of action in a significant way,

5  Government agents must administer <u>Miranda</u> warnings prior to questioning the person.  <u>Miranda v.</u>

6  <u>Arizona</u>, 384 U.S. 436 (1966).  Such a requirement thus has two components: (1) custody, and (2)

7  interrogation.  <u>Id.</u> at 477-78.  Because Defendant was not in custody when he made the statements

8  regarding his ownership in the vehicle or his alienage status, his motion to dismiss those statements lacks

9  merit.

10     Whether a person is in custody is measured by an objective standard.  <u>Berkemer v. McCarty</u>, 468

11  U.S. 420, 442 (1984).  A court must examine the totality of circumstances and determine whether "a

12  reasonable person in such circumstances would conclude after brief questioning [that] he or she would

13  not be free to leave."  <u>United States v. Beraun-Perez</u>, 812 F.2d 578, 580 (9th Cir. 1980).  Factors relevant

14  to this determination are "1) the language used to summon the individual; 2) the extent to which the

15  defendant is confronted with evidence of guilt; 3) the physical surroundings of the interrogation; 4) the

16  duration of the detention; and 5) the degree of pressure applied to detain the individual."  <u>Id.</u> (citation

17  omitted).

18     Applying this standard, Defendant was plainly not in custody during his field interview with

19  agents.  First, agents did stop the vehicle with their light, but agents did not stop the Defendant with guns

20  drawn or exert any such pressure.  They merely approached Defendant's vehicle once it had stopped and

21  asked routine questions regarding the ownership of the vehicle and for appropriate identification

22  documents.  Second, Defendant was asked about his citizenship and the ownership of his vehicle.  He

23  was not confronted with any evidence of guilt.  Third, the interview did not take place at a police station,

24  but rather on the side of I-8, and the defendant was inside the vehicle he was driving.  Fourth, agents'

25  questioning of Defendant was very brief, and lasted only long enough for them to conclude that

26  Defendant's car contained illegal aliens and that he did not possess ownership documents for that

27  vehicle.  Finally, agents used no pressure to physically restrain the Defendant.  They did not handcuff

28  him or draw their weapons to ensure compliance with their request to talk with him.  In sum, all of the

07-CR-3055L

factors traditionally evaluated by the court to determine whether a person is in custody weigh against such a finding in this case.   Moreover, the record is devoid of any evidence even suggesting that Defendant's pre-arrest statements were not voluntary.   Accordingly, Defendant's pre-arrest field admissions are admissible and Defendant's motion as to those statements should be denied.

2.      Absent Some Concrete Allegation of Error, Defendant's Post-Miranda Statements Do Not Warrant an Evidentiary Hearing.

Border Patrol agents then took defendant into custody, and the agents then timely advised Defendant that he was under arrest.   Defendant was also timely advised of his <u>Miranda</u> warnings after his arrest. He further read through the <u>Miranda</u> warnings in Spanish, initialed each warning, and signed at the bottom in agreement of waiving his <u>Miranda</u> rights.  Thus, all statements prior to Defendant's arrest are admissible; and this Court should deny the motion to suppress any statements made in the field or after his arrest.

Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of the defendant's motion. <u>See</u> <u>United States v. Batiste</u>, 868 F.2d 1089, 1093 (9th Cir. 1989) (where "defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer, . . . . the district court was not required to hold an evidentiary hearing"); <u>United States v. Moran-Garcia</u>, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (boilerplate motion containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to suppress statements); Crim. L.R. 47.1.  The local rule further provides that "the Court need not grant an evidentiary hearing where either party fails to properly support its motion for opposition."

No rights are infringed by the requirement of such a declaration.  Requiring a declaration from a defendant in no way compromises defendant's constitutional rights, as declarations in support of a motion to suppress cannot be used by the United States at trial over a defendant's objection.  <u>See</u> <u>Batiste</u>, 868 F.2d at 1092 (proper to require declaration in support of Fourth Amendment motion to suppress ); <u>Moran-Garcia</u>, 783 F. Supp. at 1271-74 (extending <u>Batiste</u> to Fifth Amendment motion to suppress). Moreover, Defendant has as much information as the Government in regards to the statements he made.

16

07-CR-3055L

See Batiste, 868 F.2d at 1092.  At least in the context of motions to suppress statements, which require

police misconduct incurred by Defendant while in custody, Defendant certainly should be able to provide

the facts supporting the claim of misconduct. The United States has provided defendant with the DVD

of the statements that he made, which also demonstrates the circumstances during which defendant made

the statements that he made.  Finally, any suggestion that 18 U.S.C. § 3501 requires an evidentiary

hearing in every case is of no merit.  Section 3501 requires only that the Court make a pretrial

determination of voluntariness "out of the presence of the jury."  Nothing in section 3501 betrays any

intent by Congress to alter the longstanding rule vesting the form of proof on matters for the court in the

discretion of the court.  Batiste, 868 F.2d at 1092 ("Whether an evidentiary hearing is appropriate rests

in the reasoned discretion of the district court.") (citation and quotation marks omitted).

### 3.    Adequate Proof to Support Rejection of a Motion to Suppress

The Ninth Circuit has expressly stated that a United States proffer based on the statement of facts

attached to the complaint is alone adequate to defeat a motion to suppress where the defense fails to

adduce specific and material facts.  See Batiste, 868 F.2d at 1092.  Moreover, the Ninth Circuit has held

that a District Court may properly deny a request for an evidentiary hearing on a motion to suppress

evidence because the defendant did not properly submit a declaration pursuant to a local rule.  See

United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991); United States v. Howell, 231 F.3d 616,

620 (9th Cir. 2000) ("An evidentiary hearing on a motion to suppress need be held only when the

moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court

to conclude that contested issues of fact exist."); see also United States v. Walczak, 783 F. 2d 852, 857

(9th Cir. 1986) (holding that evidentiary hearings on a motion to suppress are required if the moving

papers are sufficiently definite, specific, detailed, and nonconjectural to whether contested issues of fact

exist).  Even if Defendant provides factual allegations, the Court may still deny an evidentiary hearing

if the grounds for suppression consist solely of conclusory allegations of illegality.    See

United States v. Wilson, 7 F.3d 828, 834-35 (9th Cir. 1993) (District Court Judge Gordon Thompson

did not abuse his discretion in denying a request for an evidentiary hearing where the appellant's

declaration and points and authorities submitted in support of motion to suppress indicated no contested

issues of fact).

07-CR-3055L

1   Accordingly, the United States submits that suppression of these statements is not warranted,

2   given the circumstances surrounding the making of these statements, as well as the lack of a specific

3   declaration regarding the making of these statements that the United States may address.  As Defendant

4   in this case has failed to provide declarations alleging specific and material facts regarding the motion

5   to suppress statements, the Court would be within its discretion to deny Defendant's motion. Indeed,

6   such a denial may properly be made based solely on the statement of facts attached to the complaint in

7   this case, without any further showing by the United States.  The discussion of caselaw and its

8   conclusory language, absent a discussion of the particularized facts regarding suppression of the

9   defendant's statements, arguably fails to generate a disputed factual issue requiring an evidentiary

10  hearing.  See Howell, 231 F.3d at 623.

11                                              **VI**

12  **THE UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO**

13  **SUPPRESS EVIDENCE SEIZED IN VIOLATION OF THE FOURTH AMENDMENT**

14          **A.        THE MOTION TO SUPPRESS EVIDENCE**

15          Defendant further moves this Court for an order suppressing evidence pursuant to the Fourth

16  Amendment.  This motion should be denied.  Contrary to Defendant's contentions, the agents' stop of

17  Defendant's vehicle and subsequent search (and post-Miranda questioning) complied with the Fourth

18  Amendment in every respect and any evidence located in that vehicle, specifically, the numerous aliens

19  found in the vehicle, is admissible against Defendant at trial.

20                  **(1)        Agents Had Reasonable Suspicion To Stop The Car**

21          Defendant contends that any evidence seized from the blue GMC van driven by the defendant

22  on September 12, 2007, should be suppressed because agents' stop of his vehicle violated his Fourth

23  Amendment rights.  Defendant's argument is unpersuasive.  The Fourth Amendment protects individuals

24  from unreasonable searches and seizures by the Government.  United States Constitution, Amend. 4.

25  While investigatory stops, in a vehicle or otherwise, are permitted, the protections of the Fourth

26  Amendment are extended to the investigatory stops.  See Terry v. Ohio, 392 U.S. 1, 9 (1968).  With

27  respect to vehicles, an officer may stop a motorist where he has a "particularized and objective basis for

28  suspecting the particular person stopped of criminal activity."  United States v. Cortez, 449 U.S. 411,

417-18 (1981). This "particularized and objective basis," or reasonable suspicion, may be based on the totality of the circumstances – "the whole picture" – surrounding the detention. Id.; see also United States v. Sokolow, 490 U.S. 1, 7 (1989). Reasonable suspicion exists when an officer is aware of specific, articulable facts, which, together with objective and reasonable inferences, form a basis for suspecting that the particular person to be detained has committed or is about to commit a crime. See United States v. Salinas, 940 F.2d 392, 394 (9th Cir. 1991). Reasonable suspicion need not be inconsistent with innocence. "The relevant inquiry is not whether the particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of non-criminal acts." Sokolow, 490 U.S. at 10. In addition, an investigatory stop "may be justified on facts that do not amount to the probable cause required for an arrest." United States v. Brignoni-Ponce, 422 U.S. 873, 881 (1975).

The seminal case of Brignoni-Ponce, 422 U.S. 873 (1975) is illustrative. In Brignoni-Ponce, the United States Supreme Court recognized the valid public interest in controlling the illegal entry of aliens at the border by stating,

> Because of the importance of the governmental interest at stake, the minimal intrusion of a brief stop, and the absence of practical alternatives for policing the border, we hold that when an officer's observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country, he may stop the car briefly and investigate the circumstances that provoke suspicion. . . . The officer may question the driver and passengers about their citizenship and immigration status, and he may ask them to explain suspicious circumstances, but any further detention or search must be based on consent or probable cause.

Id. at 881-882. The United States Supreme Court rationalized that "a requirement of reasonable suspicion for stops allows the Government adequate means of guarding the public interest and also protects residents of the border areas from indiscriminate official interference." Id. at 883.

In addition to recognizing the public interest in controlling the illegal entry at the border and requiring reasonable suspicion for roving stops by the Border Patrol, the Brignoni-Ponce court held that any number of factors may be taken into account when deciding whether there is reasonable suspicion to stop a car in the border area. The Brignoni-Ponce Court further outlined a non-exclusive list of factors which Border Patrol agents might permissibly take into account in deciding whether reasonable suspicion exists to stop a car. These non-exclusive factors include: (1) characteristics of the area; (2) proximity to the border; (3) usual patterns of traffic and time of day; (4) previous alien or drug smuggling in the area; (5) behavior of the driver, including "obvious attempts to evade officers"; (6)

07-CR-3055L

1   appearance or behavior of the passengers; (7) model and appearance of the vehicle; and 8) officers'

2   experience. Brignoni-Ponce, 422 U.S. at 884-85. Under the totality of the circumstances approach,

3   courts should not evaluate reasonable suspicion factors "in isolation from each other...although each of

4   the series of acts [may be] 'perhaps innocent in itself'...taken together, they [may] 'warrant further

5   investigation.'" United States v. Arvizu, 534 U.S. 266, 274 (2002) (quoting Terry v. Ohio, 392 U.S. 1,

6   22 (1968)). In addition, the detaining officers may "draw on their own experience and specialized

7   training to make inferences from and deductions about the cumulative information available to them that

8   'might well elude an untrained person.'" Arvizu, 534 U.S. at 273. As the Court noted in Sokolow, the

9   reasonable suspicion analysis is "not readily, or even usefully, reduced into a neat set of legal rules" and

10   like probable cause, takes into account the totality of the circumstances. See Sokolow, 490 U.S. at 7-8.

11   During review, the court must interpret the facts present in light of the officer's training and experience

12   to determine if reasonable suspicion is valid. See Sokolow, 490 U.S. at 8.

13         Evaluating the factors listed above, the agents had reasonable suspicion to execute a stop of the

14   vehicle driven by Defendant. First, agents were working in an area known to have a high concentration

15   of both alien and drug smuggling, particularly in the parking lot (and roads close to) the Golden Acorn

16   Casino. As articulated by Agent Suarez, this parking lot is often used staging area for alien and drug

17   smuggling. Agent Suarez specifically observed the blue GMC van for ten minutes, when no one entered

18   or exited the vehicle, and then watched it pull out of the parking lot and pass I-8 and continue north.

19   Agent Suarez watched the defendant sit straight upright and travel north on Crestwood Road and then

20   turn the van around. Agent Suarez then watched as the van pulled up to an area that he knew was a

21   popular load spot for illegal aliens (and where the defendant himself stated that his group had waited).

22   Agent Suarez then saw the van again, and it appeared to be heavier than before, after coming from that

23   spot that Agent Suarez knew as a popular load spot for alien smuggling. And Agent Suarez then

24   followed the van and pulled up close to see defendant still sitting straight up, appearing nervous to Agent

25   Suarez.

26         As noted previously, the area is within one hundred miles of the border and the area is often

27   utilized by alien and drug smugglers as a staging area to wait for the checkpoints to be shut down.

28   Indeed, in Agent Suarez's experience, that this particular area (given its close proximity to the border)

07-CR-3055L

was heavily utilized by smugglers. As indicated above, the agents experience, background, and training all indicated the prevalence of drug and alien smuggling in the area where agents were conducting surveillance. The officers' experience was particularly acute in this case. Their experience indicated that this vehicle stopped at a known popular alien smuggling load spot after waiting in the Golden Acorn Casino parking lot, and then appeared heavier than before after stopping at the load spot.

All of the applicable factors outlined by the Court in Brignoni-Ponce support a finding of reasonable suspicion or more in this case. Based on the agents training and experience, they were justified in relying on these factors in pulling over Defendant, as it was clear that they had reasonable suspicion to believe that criminal activity is taking place. United States v. Sokolow, 490 U.S. 1, 7 (1989).[1/] Accordingly, nothing about the stop of Defendant's vehicle violated his Fourth Amendment rights and any evidence seized pursuant to that stop is admissible.

### (2)     Agents Search of the Vehicle was Lawful

Once agents stopped the vehicle based on a reasonable suspicion of criminal activity, they needed to derive probable cause, or an exception thereto, in order to search Defendant's vehicle pursuant to the automobile exception to the warrant requirement. California v. Acevedo, 500 U.S. 565 (1991). Here agents had probable cause to search Defendant's vehicle, and any articles therein. Accordingly, agents search of Defendant's vehicle complied with the Fourth Amendment and Defendant's motion seeking to suppress of the evidence or the fruits of that evidence should be denied.

As indicated above, the Constitution protects individuals from unreasonable searches and seizures. United States Constitution, Amend. 4. This protection extends only to areas in which a Defendant retains a subjective expectation of privacy that society would consider reasonable. See Katz v. United States, 389 U.S. 347 (1967). Accordingly, "the State's intrusion into a particular area, whether in an automobile or elsewhere, cannot result in a Fourth Amendment violation unless the area is one in which there is a 'constitutionally protected reasonable expectation of privacy'." New York v. Class, 475 U.S. 106, 112 (1986) (citing Katz, 389 U.S. at 360) (Harlan, J., concurring). The Court has recognized such an expectation of privacy, albeit a diminished one, in vehicles. Class, 475 U.S. at 112.

---

[1/] While not required, the extensive experience of the agents with respect to pervasive smuggling activity in this area, combined with their observations relating to Defendant and the vehicle he was driving, would also support a finding of probable cause to stop Defendant's vehicle.

07-CR-3055L

1  Agents clearly had probable cause to search Defendant's vehicle.  Officers may search a motor

2  vehicle based upon probable cause that the vehicle contains contraband or other evidence of a crime.

3  California v. Acevedo, 500 U.S. 565 (1991); United States v. Ross, 456 U.S. 798 (1982) (finding that

4  separate containers found within a vehicle may be searched based on probable cause if such containers

5  could contain contraband).  The Supreme Court has held that "probable cause" means "a fair probability

6  that contraband or evidence of a crime will be found" in the area searched.  Sokolow, 490 U.S. at 7.

7  In this case, once defendant stopped his vehicle, agents approached and people lying on the floor

8  of the van.  Additionally, during routine questions of the defendant, defendant indicated that a) he did

9  not have insurance or ownership papers for the car; b) that he was a Mexican citizen; c) that he did not

10  have permission to be in the United States, and d) he did not have any identification at all.  Given these

11  admissions to routine questions, as well as the numerous people lying on the floor of the van in plain

12  view of the officers, the agents had enough reasonable suspicion to search the vehicle.

13  **(3)**     **Evidentiary Hearing**

14  The Government leaves to the Court's discretion whether or not an evidentiary hearing would

15  assist the Court in evaluating the issues raised by Defendant's motions to suppress.  Should the Court

16  decide to conduct such a hearing, the Government will prepare for that hearing and subpoena the

17  witnesses the Court would find helpful.

18  **VII**

19  **NO OPPOSITION TO DEFENDANT'S REQUEST FOR LEAVE TO FILE FURTHER
MOTIONS**

20

21  The United States does not object to the granting of leave to allow Defendants to file further

22  motions, as long as the order applies equally to both parties and additional motions are based on newly

23  discovered evidence or discovery provided by the United States subsequent to the instant motion at issue.

24  **VIII**

25  **MOTION FOR RECIPROCAL DISCOVERY**

26  The United States hereby moves for reciprocal discovery from the Defendant.  To date Defendant

27  has not provided any.  The United States, pursuant to Rule 16 of the Federal Rules of Criminal

28  Procedure, requests that Defendant permit the United States to inspect, copy, and photograph any and

22

all books, papers, documents, photographs, tangible objects, or make copies of portions thereof, which are within the possession, custody or control of Defendant and which Defendant intends to introduce as evidence in their case-in-chief at trial.

The United States further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession or control of Defendant, which Defendant intend to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendants intend to call as a witness. Because the United States will comply with Defendant's request for delivery of reports of examinations, the United States is entitled to the items listed above under Rule 16(b)(1) of the Federal Rules of Criminal Procedure. The United States also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the United States receives the discovery to which it is entitled.

In addition, Rule 26.2 of the Federal Rules of Criminal Procedure requires the production of prior statements of all witnesses, except a statement made by Defendant. This rule thus provides for the reciprocal production of <u>Jencks</u> statements. The time frame established by the rule requires the statement to be provided after the witness has testified. To expedite trial proceedings, the United States hereby requests that Defendant be ordered to supply all prior statements of defense witnesses by a reasonable date before trial to be set by the Court. Such an order should include any form in which these statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes and/or reports.

07-CR-3055L

V

## CONCLUSION

For the above stated reasons, the United States respectfully submits its Response and Opposition to Defendant's Motions for Discovery, and requests that its Motion for Reciprocal Discovery be granted.

DATED: January 21, 2008.

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

*s/Stewart M. Young*
STEWART M. YOUNG
Assistant U.S. Attorney
Email: stewart.young@usdoj.gov

07-CR-3055L

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 3:07-CR-3055 L |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| | ) | |
| | ) | |
| JUAN MANUEL TORRES-GOMEZ, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, Stewart M. Young, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of the United States' Response and Opposition to Defendant's Motions and the Government's Motion for Reciprocal Discovery on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. John Ellis, Esq.
john_ellis@fd.org

2. Joe McMullen, Esq.
Joseph_mcmullen@fd.org

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 21, 2008.

s/ *Stewart M. Young*
Stewart M. Young

07-CR-3055L